UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| RANDALL WILKERSON, )<br>      Plaintiff, )<br>)<br>  vs. )<br>)<br>INDIANA FAMILY AND SOCIAL )<br>SERVICES ADMINISTRATION, )<br>DIVISION OF MENTAL HEALTH )<br>operating as MADISON STATE )<br>HOSPITAL and STATE OF INDIANA, )<br>      Defendants. ) | 4:08-cv-0054-RLY-WGH |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff is currently employed as a Psychiatric Attendant 4 ("PA 4") at the Madison State Hospital ("Madison"), a facility run by an agency of the State of Indiana known as the Indiana Family and Social Services Administration ("FSSA") (collectively "Defendants"). Plaintiff claims: (1) that he has been treated differently than similarly situated female employees (Count I); (2) that he has been denied requests for transfer and a request for promotion due to his gender (Count I); (3) that he has been subjected to a hostile work environment (Count II); (4) that he has been retaliated against for complaining of discrimination (Count III); and (5) that Madison intentionally engaged in conduct that caused him severe emotional distress (Count IV). Defendants now move for summary judgment, and the Plaintiff cross moves for summary judgment on Plaintiff's

1

denial of transfer and promotion claims. For the reasons set forth below, the court **GRANTS** the Defendants' motion and **DENIES** the Plaintiff's cross motion.

I.   **Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Some alleged factual dispute that does not rise to a genuine issue of material fact will not alone defeat a summary judgment motion. *Id.* at 247–48.

In deciding whether a genuine issue of material fact exists, the court views the evidence and draws all inferences in favor of the nonmoving party. *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996). However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). As this case is before the court on cross motions for summary judgment with respect to all of Plaintiff's claims, the court evaluates each movant's motion under the requirements of Rule 56 stated above. WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 at 23-24 (2d ed. 1990) ("The court must rule on each party's motion on an

individual basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard.").

**II.     Facts**

    **A.     Background**

1. Plaintiff began his employment with the State of Indiana in 1982 at Muscatatuck State Hospital. (Deposition of Randy Wilkerson ("Plaintiff Dep.") at 11).

2. On October 30, 2005, Plaintiff began working the night shift at Madison as a PA 4. (*Id*. at 11, 35; Affidavit of Debora Woodfill ("Woodfill Aff."), Ex. 3). As a PA 4, Plaintiff is responsible for making sure patients are safe, dressed, fed, and cared for. (Plaintiff Dep. at 68).

3. Prior to his move to Madison, Plaintiff held the position of supervisor for seventeen (17) years. (*Id*. at 11). Plaintiff took a demotion when he went to Madison, as they had fewer supervisors and there were no supervisor positions open at the time. (*Id*.).

4. All of the supervisors at Madison are nurses by training. Plaintiff is not a nurse. (*Id*. 77).

    **B.     Code Green**

5. Code Green is the term used at Madison to describe situations where staff members are summoned to a particular unit to subdue or restrain a patient when the need arises. (Affidavit of Judy Barbeau ("Barbeau Aff.") ¶ 11).

6. Prior to the implementation of the Code Green policy in August 2006, the policy

for responding to emergencies entailed an attendant supervisor calling the ward to request that a specific person respond. (Plaintiff Dep. at 52-53). The Code Green call system was implemented following installation of an intercom system and required that one person-per-ward (there were 9 wards) respond to any signaled emergency. (*Id*. at 41-42). Thus, the duty to respond to a Code Green alert is rotated among staff members (both male and female) on each housing unit. (Barbeau Aff. ¶¶ 11-12; Plaintiff Dep. at 42, 49).

7. A revision of the Code Green policy implemented as of January 26, 2007, requires that those who respond to a Code Green sign a Code Green Report. (Plaintiff Dep. at 46, 51-52; Woodfill Aff. ¶ 15).

8. Madison has a policy that all Code Green alerts be recorded in terms of those who respond to a Code Green alert and those who not only respond but also assume primary responsibility for subduing or restraining the unruly patient. (Woodfill Aff. ¶ 15).

9. Plaintiff has signed the Code Green Report each time he has responded and participated in a Code Green. (Plaintiff Dep. at 52).

10. According to the Code Green Response Logs, during the time period July 1, 2007, through December 29, 2009, there have been 57 Code Green alerts on the night shift. (Woodfill Aff. ¶ 21). Of those 57, Plaintiff has responded to 11[1] Code

---

[1] The Woodfill Affidavit avers that Plaintiff responded to 10 Code Green alerts. However, the Code Green Summary Log, attached to the affidavit, shows that he responded to

Green alerts and has participated in 6 of those incidents. (*Id.* ¶ 22; *id.*, Ex. A).

11. Since Madison instituted this new Code Green policy, there has been one incident where a female nurse called and specifically asked to have a man sent to her unit. (Plaintiff Dep. at 54). In that incident, Plaintiff helped to calm the person down so that a physical restraint was unnecessary. (*Id.* at 54).

12. Plaintiff testified to two other incidents wherein Leslie Clark, a nurse/supervisor ("Nurse Clark"), requested help from male employees. These two incidents did not involve a Code Green alert, however. Nurse Clark needed assistance calming down a patient and/or sending the patient back into his/her room. Plaintiff was involved in one of these incidents. (*Id.* at 54-55).

13. Plaintiff testified that female Madison employees should be required to respond to Code Green alerts regardless of whether they have the physical strength to restrain a patient, because "they're trained just like we are." (*Id.* at 62).

14. Plaintiff testified that restraining patients is physically demanding and dangerous work. (*Id.* at 63).

15. Plaintiff is 5 feet 10 inches tall, and weighs 245 pounds. (*Id.* at 101).

### C. Requests for Transfer and Promotion

16. Since obtaining his position at Madison, Plaintiff has applied to transfer to other units six (6) times, and applied to transfer to the day shift on his unit one (1) time.

---

11. (Woodfill Aff., Ex. A).

(*Id*. at 75-77).

17. Plaintiff's requests for transfer were denied by Judy Barbeau, Madison's Director of Nursing Services ("Nurse Barbeau"). (*Id*. at 80). The open positions were filled by other female employees. (*Id*. at 75-76).

18. Plaintiff did not identify who these other female employees were by name, but testified that he thought they had less work experience than he did. (*Id*. at 35, 76).

19. Plaintiff also applied for a promotion to a supervisory position, and was denied the promotion. (*Id*. at 35, 78). The position was filled by a man. (*Id*. at 36).

    **D.    Grievances and Letters of Reprimand**

20. In late 2006 or early 2007, Plaintiff believed that there was not enough staff assigned to his unit. Plaintiff testified that "the worst behaviors come to our ward." (*Id*. at 23).

21. During that time frame, Plaintiff was called upon to subdue an angry patient who bit Plaintiff's armpit. (*Id*.).

22. Plaintiff then filed a grievance, requesting more staff. (*Id*.).

23. Nurse Barbeau informed Plaintiff that Madison would increase the number of staff on the unit. (*Id*.).

24. Three days later, Nurse Barbeau notified Plaintiff that Madison would not increase the number of staff on the unit. (*Id*. at 24).

25. After Plaintiff filed a second grievance related to the incident described above, Nurse Barbeau issued Plaintiff a letter of reprimand in January 2007 for "taking

down" a patient.  (*Id*.).

26. Plaintiff filed a grievance over the letter of reprimand, and the letter of reprimand was later overturned and was to be taken out of his file.  (*Id*. at 24-25).

27. Plaintiff believes the grievance was not removed from his file, because in disciplinary notices dated June 23, 2009, and December 14, 2009, Michael LeSaux from Human Resources, referred to that letter of reprimand.  (*See* Plaintiff's Exs. E, F).

28. On November 14, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he has been discriminated against and harassed due to his sex.  (Plaintiff's Ex. G).

29. Any additional facts necessary for a fair determination of this motion will be referenced in the Discussion Section below.

**III.   Discussion**

   **A.   Plaintiff's Disparate Treatment Claims**

In Count I of Plaintiff's Complaint, Plaintiff alleges that he has been treated differently than similarly situated women in two respects: (1) Plaintiff was expected to respond to more Code Green alerts than similarly situated female co-employees; and (2) Plaintiff was denied requests for transfer and a request for promotion due to his gender. The elements of the prima facie case for each of Plaintiff's disparate treatment claims (gender discrimination and failure to transfer/promote) are slightly different, so the court will analyze these claims separately below.

### 1. Gender Discrimination

A plaintiff can show that he was a victim of unlawful discrimination either by providing direct evidence or by proceeding under the indirect, burden-shifting method. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004). Plaintiff has no direct evidence of discrimination, and thus, proceeds under the indirect method of proof. That approach requires a plaintiff to first establish a prima facie case of discrimination. *Id.* To establish a prima facie case of gender discrimination, a male plaintiff must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) his employer took an adverse employment action against him; and (4) he was treated less favorably than at least one similarly-situated female colleague. *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). The parties argue elements three and four above.

#### a. Adverse Employment Action

Plaintiff alleges that his "having to shoulder, with his male co-workers, almost all of the burden of actually physically dealing with violent patients" constitutes an adverse employment action. (Response at 14). In support of his position, Plaintiff cites the court to *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006). Plaintiff's reference to that case is inapposite, as *Burlington Northern* relates to what constitutes an adverse employment action in a retaliation case. "The standard for whether an adverse employment action is 'material,' and therefore actionable is somewhat broader for retaliation claims than for disparate treatment claims." *Fulmore v. Home Depot,*

8

*U.S.A., Inc.*, 423 F. Supp. 2d 861, 879 (S.D. Ind. 2006) (citing 42 U.S.C. § 2000e-2(a), 2000e-3(a)).

Adverse employment actions in the context of a disparate treatment case affect the terms and conditions of one's employment, typically resulting in economic injury. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005). While adverse employment actions "'can encompass other forms of adversity,'" *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996), the actions complained of must result in some form of tangible job consequence. *Id*. at 648 (citing *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002)). "Absent any evidence suggesting that discrimination motivated work distributions, the mere fact that an employee . . . had a heavier workload than h[is] co-workers does not amount to an adverse employment action." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007).

The evidence reflects that from July 1, 2007, to December 29, 2009, there were 57 Code Green alerts on the night shift. Of those, Plaintiff responded to 11 and participated in 6. Moreover, since the implementation of the Code Green policy, Plaintiff testified that he could recall only one incident wherein a female nurse called and specifically asked for a man to be sent to her unit. Thus, the evidence does not show that Plaintiff's job responsibilities were materially affected as a result of a female nurse/supervisor's request for his assistance in Code Green alerts.

Moreover, even if Plaintiff presented evidence that he participated in significantly more Code Green alerts than his female co-workers, there is no evidence that the requests

for his help were motivated by a prohibited animus. Instead, it appears that such requests for his help (and that of other male employees) were born out of necessity. Indeed, Code Green alerts are only instituted in an emergency situation when a patient is physically out-of-control. It only makes sense that someone of Plaintiff's stature – 5 feet 10 inches and 245 pounds – would be called upon to help. Accordingly, Plaintiff fails to show that he suffered a material adverse employment action to support his disparate treatment gender discrimination claim.

### b. Similarly Situated Females

Plaintiff contends that "female staff members never participated in actually restraining a patient," and thus, he was treated less favorably than these women.

In order for a plaintiff to show that he is similarly situated to another employee, he must show that the employee is "directly comparable to h[im] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citing *Greer v. Bd. of Educ.*, 267 F.3d 723, 728 (7th Cir. 2001); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)). In making this determination, the court must "'look at all relevant factors, the number of which depends on the context of the case.'" *Id.* (quoting *Radue*, 219 F.3d at 617). Two key factors include whether the employees had the same supervisor and were subject to the same standards. *Id.*

Here, Plaintiff fails to identify even one female PA 4 who was subject to the same supervisor and the same standards, but was treated more favorably than him – i.e., a female PA 4 who was not required to respond to a Code Green alert when it was her turn

on rotation. Without such a showing, Plaintiff's gender discrimination claim cannot survive.

Because Plaintiff did not suffer a material adverse employment action nor identify a similarly situated female who was treated more favorably, Defendants' Motion for Summary Judgment on Plaintiff's gender discrimination claim must be **GRANTED**.

### 2.     Failure to Transfer/Promote

Plaintiff also alleges that he was denied seven (7) requests for transfer and a request for a promotion because of his sex. There is no prima facie case for a denial of transfer claim per se. Accordingly, the court will analyze this claim as a typical gender discrimination claim. The elements of the prima facie case are described in the previous section.

The problem with Plaintiff's failure to transfer claim is that he fails to identify who received the transfers, other than to say that the transfers were given to female employees who, in his opinion, had less work experience than he. Thus, the court is unable to determine whether these female employees were similarly situated to him. This absence of evidence relating to similarly situated female employees is fatal to his claim.

With respect to his failure to promote claim, the prima facie case consists of the following elements: (1) the plaintiff is a member of a protected class; (2) he applied for and was qualified for the position sought; (3) he was rejected for the position; and (4) the employer granted the position to someone outside of the protected group who was not better qualified than the plaintiff. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th

Cir. 2003). Plaintiff admitted that the position was filled by a man. Accordingly, Plaintiff's failure to promote claim likewise fails on the merits.

For the reasons set forth above, Defendants' Motion for Summary Judgment on Plaintiff's failure to transfer/promote claims is **GRANTED**, and Plaintiff's Cross Motion for Summary Judgment on that issue is **DENIED**.

**B.     Hostile Work Environment**

Plaintiff claims that "[t]he accumulation of discriminatory acts and practices of which [he] complains . . . were clearly pervasive enough to constitute a hostile work environment." (Response at 19).

In order for Plaintiff to prevail on his Title VII hostile work environment claim, Plaintiff must show that because of his gender: "(1) []he was subjected to unwelcome harassment; (2) the harassment was based on [his sex]; and (3) the harassment was sufficiently severe or pervasive so as to alter the condition of h[is] employment and create a hostile or abusive atmosphere." *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731 (7th Cir. 2009) (citing *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)). An objectively hostile work environment is one that is "hellish." *See Whittaker*, 424 F.3d at 645 (holding that an actionable hostile work environment is one where the workplace is "hellish.").

The actions alleged by Plaintiff were not such that a reasonable person could view them as hostile or abusive. The conduct was not frequent, severe, or pervasive and did not affect his work environment. It certainly did not create an atmosphere that could be

described as "hellish." Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's hostile work environment claim must be **GRANTED**.

### C. Discrimination/Retaliation

Plaintiff's claim centers around a reprimand that he claims should have been taken out of his personnel file, but was not. Plaintiff characterizes his claim as either a claim for discrimination or retaliation. No matter which theory Plaintiff proceeds under, he must show that he suffered an adverse employment action. This, he cannot do. The law is quite clear that negative performance evaluations, unfair reprimands, and written warnings, while "putatively disciplinary measures," without more, do not constitute adverse employment actions. *Whittaker*, 424 F.3d at 648; *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir. 2001) ("[U]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions."). This analysis also applies to requests to transfer. *See Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001) (finding that a purely lateral transfer that does not change terms and conditions of employment is not an adverse employment action). Accordingly, his discrimination/retaliation claim fail as a matter of law.

Plaintiff also claims that a recent denial of his request for time off to attend a settlement conference was retaliatory. First, this action did not occur before the filing of this lawsuit as the settlement conference related to this lawsuit. Further, denial of a request for time off work is not a significant enough harm to constitute a materially adverse employment action. Accordingly, this claim also fails on the merits, and

13

Defendants' Motion for Summary Judgment on Plaintiff's discrimination/retaliation claim must be **GRANTED**.

### D. Intentional Infliction of Emotional Distress

Plaintiff's last claim for relief is a state law claim for intentional infliction of emotional distress. Plaintiff did not respond to Defendants' motion with respect to this claim, and the court finds no evidence in the record to support such a claim. Accordingly, this claim also fails on the merits, and Defendants' Motion for Summary Judgment on Plaintiff's intentional infliction of emotional distress claim must be **GRANTED**.

### IV. Conclusion

For the reasons set forth above, the court hereby **GRANTS** the Defendants' Motion for Summary Judgment (Docket # 44) and **DENIES** Plaintiff's Cross Motion for Summary Judgment (Docket # 50) on his denial of transfer/promotion claims.

**SO ORDERED** this  25th   day of May 2010.

                                                          RICHARD L. YOUNG, CHIEF JUDGE
                                                          United States District Court
                                                          Southern District of Indiana

Electronic Copies to:

Donald G. Banta
INDIANA OFFICE OF THE ATTORNEY GENERAL
donald.banta@atg.in.gov

14

Laura Lee Bowker
OFFICE OF THE INDIANA ATTORNEY GENERAL
laura.bowker@atg.in.gov

Samuel George Hayward
ADAMS HAYWARD & WELSH
samuelghayward@hotmail.com